```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
JAMES HUMBER,                         :     14 Civ. 5520 (JCF)
                                      :
            Plaintiff,                :        MEMORANDUM
                                      :        AND   ORDER
                                      :
    - against -                       :
                                      :
COMMISSIONER OF SOCIAL SECURITY,      :
                                      :
            Defendant.                :
- - - - - - - - - - - - - - - - - - -:
```
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

The plaintiff, James Humber, brings this action pro se pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security (the "Commissioner") denying his claim for retroactive Supplemental Security Income ("SSI") benefits. The parties consented to proceed before me for all purposes pursuant to 28 U.S.C. § 636(c). The Commissioner then filed a motion to dismiss the complaint for failure to exhaust administrative remedies. By order dated June 3, 2015, I converted the Commissioner's application to a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and provided the plaintiff an opportunity to respond accordingly.

For the reasons stated below, the motion is granted in part and denied in part, and the case is remanded to the Social Security

Administration (the "SSA") for a hearing before an Administrative Law Judge ("ALJ").

Background

Mr. Humber filed applications for disability insurance benefits and SSI in September 2003. (Declaration of Katherine Rae Lingen dated Feb. 19, 2015 ("Lingen Decl."), ¶ (3)(a); Disability Determination and Transmittal, attached as Exh. 1 to Lingen Decl., at 1). The Commissioner denied his applications on April 2, 2004. (Lingen Decl., ¶ (3)(a); SSA Disability Determination at 2). Pursuant to the SSA's guidelines, Mr. Humber requested a hearing before an ALJ to challenge the agency's determination. (Lingen Decl., ¶ (3)(b); SSA Letter dated June 10, 2004, attached as Exh. 2 to Lingen Decl.). Following a hearing on March 1, 2005, the ALJ awarded Mr. Humber disability insurance benefits and found him eligible for SSI payments as of May 5, 2003. (Lingen Decl., ¶ (3)(c); SSA Decision dated March 10, 2005, attached as part of Exh. 3 to Lingen Decl., at 4).

On May 11, 2005, the SSA informed Mr. Humber that his first payment of SSI benefits in the amount of $7,367.72 was being withheld pursuant to an interim assistance reimbursement agreement that he had entered into with the Westchester County Department of Social Services ("DSS"). (SSA Notice dated May 11, 2005, attached

to Complaint ("Compl.") at 11).[1]  Pursuant to the agreement, Mr. Humber agreed that the SSA would reimburse DSS for any assistance paid to him while his application for SSI benefits was pending from September 2003 through December 2003.  (Lingen Decl., ¶ (3)(g); Letter of Elizabeth B. Bake dated Nov. 17, 2011 ("Bake 11/17/11 Letter"), attached as Exh. 7 to Lingen Decl.).

On July 7, 2011, Mr. Humber sent a letter to the Commissioner and filed a request for reconsideration seeking review of the amount of retroactive SSI benefits paid to him.  (Lingen Decl., ¶ (3)(d); Letter of James Humber dated July 7, 2011 & Request for Reconsideration dated July 6, 2011, attached as Exh. 4 to Lingen Decl.).  In response, the agency acknowledged that Mr. Humber's inquiry related to the payment of his retroactive disability benefits but indicated only that an underpayment of $909.00 had occurred in his case and stated that it was depositing that amount in his bank account.  (Lingen Decl., ¶ (3)(e); Letter of Elizabeth B. Bake dated July 27, 2011, attached as Exh. 5 to Lingen Decl.).  Mr. Humber sent the agency six additional letters concerning the unresolved issue of the diversion of funds to DSS.  (Lingen Decl., ¶ (3)(f); Letters of James Humber dated Aug. 4, 2011, Sept. 7, 2011,

---

[1] This page number refers to the page number assigned by the Court's electronic case filing system.

Oct. 4, 2011, Nov. 3, 2011, Nov. 15, 2011, and Nov. 28, 2011 (collectively "Humber Aug.-Nov. 2011 Letters"), attached as Exh. 6 to Lingen Decl.). In each, he requested information regarding his retroactive benefits but did not request a hearing on the agency's determination of his request for reconsideration. (Lingen Decl., ¶ (3)(f); Humber Aug.-Nov. 2011 Letters).  In his last two letters, he alleged that DSS did not receive any of the $7,367.72 in retroactive benefits.  (Letters of James Humber dated Nov. 15, 2011, and Nov. 28, 2011).

In response to Mr. Humber's November 3, 2011, letter, the SSA sent him a letter reiterating that it had sent his retroactive benefits payment of $7,367.72 to DSS. (Lingen Decl., ¶ (3)(g); Bake 11/17/11 Letter).  The SSA's letter explained that DSS is the agency responsible for deducting the assistance paid to Mr. Humber from the amount given to DSS by the SSA, but it failed to make any reference to the SSA's administrative appeals process.  (Bake 11/17/11 Letter) ("After the [DSS] deducts the assistance paid to you, that department, not the [SSA], is responsible for refunding any remaining balance to you. . . .").

On December 2, 2011, Mr. Humber submitted a second request for reconsideration stating that he had not received an overpayment. (Lingen Decl., ¶ (3)(h); Request for Reconsideration dated Dec. 2. 2011, attached as Exh. 8 to Lingen Decl.) ("I received 3 different

4

notices telling me 3 different things.  I am not overpaid, and I should not be made to pay back any money you say I owe.  It was SSA's mistake that I was overpaid.").  It is unclear from the record to what this request for reconsideration was referring and whether it was distinct from the claim for retroactive benefits in Mr. Humber's initial request for reconsideration.  (Lingen Decl., ¶ (3)(d); Letter of James Humber dated July 7, 2011 & Request for Reconsideration dated July 6, 2011).

Mr. Humber then filed this action on July 17, 2014, seeking judicial review of the SSA's determination of his retroactive SSI benefits.  Mr. Humber argues that it is "unfair" for the SSA to claim that he has not exhausted his administrative remedies because the SSA has failed to act on his request for three years.  (Humber Aff., ¶ 10).

Discussion

　　A.  Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, a court will grant summary judgment if "the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-286 (2d Cir. 2002); Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co., 189 F.3d 208,

5

214 (2d Cir. 1999). The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The opposing party then must come forward with specific materials establishing the existence of a genuine dispute. Fed. R. Civ. P. 56(c). Where the non-movant fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. Celotex, 477 U.S. at 322.

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995). However, the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Anderson, 477 U.S. at 249, and grant summary judgment where the non-movant's evidence is conclusory, speculative, or not significantly probative. Id. at 249-50. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First National Bank of Arizona v. Cities

6

Service Co., 391 U.S. 253, 288 (1968)).

In addition, the court's review of the record is limited to facts that would be admissible at trial.  Rule 56 states that affidavits in support of or against summary judgment shall "set out facts that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(4). Accordingly, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997).  A party may not oppose a summary judgment motion on the basis of inadmissible evidence, unless the party can "show[] that admissible evidence will be available at trial."  Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 924 (2d Cir. 1985); see also Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001)("Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial.").

Furthermore, the submissions of a pro se plaintiff like Mr. Humber must be liberally construed on "the understanding that 'implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" Abreu v. Astrue, No. 11 CV 0521, 2011 WL 3420609, at *2 (E.D.N.Y. Aug. 4, 2011) (quoting Abbas v.

Dixon, 480 F. 3d 636, 639 (2d Cir. 2007)).  Nevertheless, proceeding pro se does not relieve a litigant from the usual requirements of summary judgment, and a pro se party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)).

   B.   Exhaustion of Administrative Remedies

Section 205(g) of the Social Security Act provides for limited judicial review of final decisions of the Commissioner.  That section states, in pertinent part, that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain review of such decision" in a "district court of the United States."  42 U.S.C. § 405(g) (emphasis and alteration added).  The SSA has promulgated regulations outlining the process by which an applicant must exhaust administrative remedies prior to appealing a "final decision" in federal court.  After the SSA makes a determination regarding an initial request for benefits, an applicant who wishes to contest that decision must first seek reconsideration, then request a hearing before an ALJ, and then, if still unsatisfied, request a review of the ALJ's decision by the Appeals Council.  20 C.F.R. § 416.1400(a); Louis v. Commissioner of Social Security, No. 09 Civ. 4725, 2010 WL 743939, at *2 (S.D.N.Y. March 2, 2010).  Only after

a plaintiff has completed these steps and obtained a decision from the Appeals Council will the decision become "final" and potentially eligible for federal district court review.  20 C.F.R. §§ 416.1400(a), 416.1481; see also Escalera v. Commissioner of Social Security, 457 F. App'x 4, 6 (2d Cir. 2011).

Mr. Humber initiated the appropriate administrative procedure before seeking judicial review by submitting a request for reconsideration of the May 11, 2005, notice.[2]  (Lingen Decl., ¶ (3)(d); Request for Reconsideration dated July 6, 2011).  However, after receiving both the July 27, 2011, and November 17, 2011, letters from the SSA denying his request for reconsideration, Mr. Humber sent additional letters in which he inquired about his retroactive benefits but did not request a hearing.  (Lingen Decl., ¶ (3)(e), (g); Humber Aug.-Nov. 2011 Letters.  As a result, Mr. Humber has "not pursued his claim at all requisite levels of the administrative process, and he has not satisfied the exhaustion requirement."  Cost v. Social Security Administration, 770 F. Supp. 2d 45, 50 (D.D.C. 2011), aff'd, No. 11-5132, 2011 WL 6759544 (D.C. Cir. Dec. 2, 2011).  Accordingly, his claim is not a challenge to

---

[2] In his request for reconsideration, Mr. Humber writes that he is "requesting a hear" regarding his retroactive benefits. (Request for Reconsideration dated July 6, 2011).  However, a request for reconsideration is a step distinct from requesting a hearing before an ALJ.  20 C.F.R. § 416.1400(a).

a "final decision" under § 405(g) that is subject to review by this Court.

### C. Exceptions to Exhaustion

There are certain circumstances in which a federal court may review an SSI claim even though it has not been adjudicated on the merits in a hearing that has produced a "final decision." "[A] plaintiff's failure to exhaust administrative remedies can be excused if (1) the claim is collateral to a demand for benefits, (2) exhaustion would be futile, or (3) requiring exhaustion would result in irreparable harm." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997). Mr. Humber's claim "is not collateral to his demand for benefits, as it involves a demand for [retroactive] benefits." Escalera, 457 F. App'x at 6. Although he contends that the agency failed to act on his request and has penalized him each time that he inquired about his retroactive benefits, he has not shown that a hearing before an ALJ and, if necessary, subsequent review by the Appeals Council would be futile. See id. at 6-7. "For exhaustion to be futile, there must be a 'certainty of an adverse decision or indications that pursuit of administrative remedies would be clearly useless.'" Cost, 770 F. Supp. 2d at 50 (citing UDC Chairs Chapter, American Association of University Professors v. Board of Trustees of University of District of Columbia., 56 F.3d 1469, 1475 (D.C. Cir. 1995) (internal quotation marks omitted)); see also Hall v.

10

Sebelius, 689 F. Supp. 2d 10, 23 (D.D.C. 2009) (finding that plaintiff who "sought an administrative hearing, but received no response from the SSA for approximately three years" had not fully exhausted his administrative remedies).  Nothing in the record suggests that the SSA would be unwilling to consider Mr. Humber's claim at a hearing before an ALJ.  Finally, Mr. Humber is currently receiving benefits from the agency and has not shown that requiring exhaustion would result in irreparable harm such that "no post hoc relief would be adequate." Smith v. Schweiker, 709 F.2d 777, 780 (2d Cir. 1983).

Courts may also dispense with the hearing requirement when "the plaintiff has raised a colorable constitutional claim relating to the agency decision." Guerra v. Commissioner of Social Security, No. 12 Civ. 6750, 2013 WL 3481284, at *3 (S.D.N.Y. July 1, 2013) (internal quotation marks omitted).  The SSA's actions here do not constitute a violation of due process.  The agency responded to Mr. Humber's July 7, 2011, request for reconsideration on July 27, 2011, and on November 17, 2011, stating in the latter letter its determination as to the payment of retroactive benefits to DSS. (Bake 11/17/11 Letter).  Although the determination did not notify Mr. Humber of the proper procedure to contest the denial of his request, he has not yet been denied an opportunity to request a hearing or to exhaust his administrative remedies.

D. <u>Remedy</u>

Although, for the reasons discussed above, I may not reach the merits of Mr. Humber's claim, an unqualified dismissal of his action would not be appropriate.  The SSA is required to provide notice of how a claimant, especially a claimant proceeding <u>pro se</u>, may pursue his administrative claims.[3]  <u>See</u> 20 C.F.R. § 404.911(a)(2), (b)(6); <u>Laursen v. Massanari</u>, 164 F. Supp. 2d 317, 320 (E.D.N.Y. 2001) ("To be added to the mix is the realization that many claimants for social security benefits are not well educated or are not adept in the English language; moreover, they invariably are not represented by counsel.  The courts have therefore charged the Commissioner with a heightened responsibility to vouchsafe their rights, including the need for express notice of procedural rules."); <u>Ardito v. Barnhart</u>, 278 F. Supp. 2d 247, 256-57 (D. Conn. 2002) (finding that the denial notice received by plaintiff violated his procedural due process rights because it did not explain the consequences of reapplying for benefits rather than seeking further administrative review);

---

[3] "Consistent with this responsibility, the Commissioner asks claimants under its 'good faith' regulation governing extension requests, '[w]hether our action misled you,' [20 C.F.R.] § 404.911(a)(2), and whether the clamant was given 'incorrect or incomplete information about when and how to . . . file a civil suit.' [20 C.F.R.] § 404.911(b)(6)." <u>Laursen</u>, 164 F. Supp. 2d at 320 n. 3.  Consequently, inadequate notification regarding how to pursue administrative review is considered by the SSA itself to excuse untimely requests for further review.

Christopher v. Secretary of Health and Human Services, 702 F. Supp. 41, 43 (N.D.N.Y. 1989) ("[T]he [Commissioner] has an affirmative duty to avoid providing applicants with misleading information, especially when applicant was without counsel at the time . . . and relied on the plain language of her denial notice.") (internal quotation marks omitted); cf. Escalera, 457 F. App'x at 7 (finding that agency did not mislead plaintiff to believe that in-person objections at agency office would satisfy SSA appeals process because "its notices plainly stated that he had to make the request in writing, within 60 days"). Because the determination denying Mr. Humber's retroactive benefits did not include information about the subsequent procedural requirements for review, including the need to request a hearing before an ALJ, he did not have sufficient information about how to pursue his administrative remedies properly.

Remand for a hearing is therefore warranted. "Indeed, a full and fair adjudication of [Mr. Humber's] claims would be best achieved by allowing the SSA an opportunity to correct any of its own errors," including any errors made in conjunction with the retroactive benefits transferred to DSS, "and compiling a record which is adequate for judicial review with the benefit of the SSA's experience and expertise." Cost, 770 F. Supp. 2d at 51. In the

13

interest of justice and efficiency, this case is thus remanded to the SSA for a hearing before an ALJ.  20 C.F.R. § 404.900(a).

Conclusion

For the reasons set forth above, the defendant's motion (Docket no. 21) is granted in part and denied in part.  The case is remanded to the SSA for a hearing before an ALJ on Mr. Humber's claim that he is owed retroactive benefits by the SSA.[4]  The Clerk of Court shall enter judgment accordingly and close this action.

SO ORDERED.

*/s/ James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          June 29, 2015

Copies mailed this date:

James Humber
111 Lockwood Ave., Apt. 410
New Rochelle, NY 10801

Tomasina Digrigoli, Esq.
Special Assistant U.S. Attorney
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278

---

[4] An appeal from this determination would not be taken in good faith. 28 U.S.C. § 1915(a)(3).